*(Criminal Court of Cook County.)*

## People of the State of Illinois

### vs.

### Harry Boer.

(July 10, 1901.)

1. LARCENY—INDICTMENT, SUFFICIENCY OF INSTRUCTION. An instruction in a trial, under an indictment for larceny of water from a city which informs the jury that "the taking of water from a city main, without a permit so to do, with intent to use the same without paying therefor constitutes larceny of whatever quantity is so taken," is bad because it omits the "felonious intent" necessary to constitute the crime of larceny.

2. CRIMINAL LAW—RIGHTS OF DEFENDANT—INSTRUCTIONS. A defendant has a right in all cases to insist that the jury be instructed that they must find all the constituents of the crime to exist, and it is no answer to say that although an instruction does not state the law correctly, the evidence shows that the de-

fendant is guilty. It is the right of the defendant to demand that he be legally convicted.

3. SAME—ERRONEOUS INSTRUCTIONS, EFFECT OF. Where proof of guilt is clear, an erroneous instruction will not be a ground of reversal unless it appears that the jury may have been misled by such erroneous instruction.

4. INSTRUCTION BY STATE AS TO NECESSITY OF PROVING EVERY CIRCUMSTANCE RELIED UPON. An instruction that it is not necessary for the state to prove every circumstance relied upon to show the guilt of the defendant, but that it is sufficient, if, upon considering all the evidence, the jury believe the defendant guilty, *held* erroneous in any case where circumstantial evidence is relied upon.

5. CRIMINAL LAW—PRESUMPTION OF INNOCENCE. Strong suspicion or strong probabilities of guilt are not sufficient to overcome the presumption of innocence with which the law clothes every defendant.

6. INDICTMENT FOR LARCENY OF WATER FROM A CITY WATER MAIN— NEW TRIAL. The defendant was indicted and tried for larceny of water from a city. Upon a motion for new trial it appearing that erroneous instructions had been given to the jury, and the proof of defendant's guilt not being clear upon a review of the evidence it was *held* that a new trial must be granted.

Indictment for larceny of water from the city. Motion for a new trial. Heard before Judge Murray F. Tuley, July 10, 1901, criminal court of Cook county. The facts are stated in the opinion.

TULEY, J.:—

In this case two written instructions were asked by the state's attorney, together with a number of general printed or stock instructions. The two written instructions, in substance, inform the jury, "That the taking of water from a city main, without a permit so to do, with intent to use the same without paying therefor, constitutes larceny of whatever quantity is so taken." The state's attorney concedes that both such instructions are bad, because they omit the "felonious intent" which is necessary to constitute the crime of larceny.

The statute defines larceny to be the *stealing*, taking and carrying away, etc., of the property of another. There could

be no stealing unless there be a "felonious intent" in the taking and carrying away. The state, in its numerous printed instructions, omitted to ask for one defining larceny, which is always asked for and given in larceny cases. This omission was not noticed by the court. If such instruction had been asked and given to the jury, the defect in the two written instructions would have been obviated.

There is no instruction among the many given which tells the jury that there must be a "felonious intent" in the taking and carrying away of the water. A defendant has the right in all cases to insist that the jury be instructed that they must find all the constituents of the crime to exist, and it is no answer to say that although an instruction does not state the law correctly, the evidence shows that the defendant is guilty. It is the right of the defendant to demand that he be legally convicted. There are decisions of the supreme court to the effect that where the proof of guilt is clear, an erroneous instruction will not be a ground of reversal unless it appears that the jury may have been misled by such erroneous instruction. I have carefully read the entire testimony given in this case to see if the guilt of the defendant is clearly shown, and I have arrived at the conclusion that it is not, and also that there is grave doubt whether the evidence is legally sufficient to maintain a verdict of guilty. It is, when read in cold type, not as strong against the defendant as I supposed it to be at the time of the trial.

In 1898 a four-inch water pipe was laid from a corner of the premises of the Continental Packing Company, for a distance of about five hundred feet into the company's pump house. At the corner referred to it connected with a pipe upon adjoining premises, which connected with the city water main in the public street. No water meter was attached to said pipe. When the pipe on the adjoining premises and the connection with the main was made, does not appear. The pipe was laid by two men working after hours, and as late as 12 a. m. at night for one week. One of the men, Beauchamp, was a witness; he testified that the defendant Boer one day told him that the engineer wanted to see him about

laying some pipe, and after that he laid some pipe under the direction of the engineer other than the pipe in question and sometime after laid the pipe in question by the direction of the engineer. He received his orders from the engineer, and did not see the defendant Boer about at any time while the pipe was being laid.

There is no sufficient evidence to show that the defendant ever knew that this pipe was laid or was being laid, or that he ever knew of any water passing through this pipe, or that he directed or advised in regard to the same in any way. Nor is there any direct evidence that any water ever passed through this pipe, or that any pump was ever connected with the pipe.

The city, in September, 1900, was engaged in looking for bogus pipe in that vicinity for two or three days prior to discovering the connection of the four-inch pipe in question, with the city water main in the public street. The city workmen then traced the pipe to and under the company's old ice house, which stood at the corner where the pipe connecting with the main entered the company's premises. They there found that under the floor of the ice house the pipe had been broken, the break indicating that it had been very recently broken, and at the company's pump house, the four-inch pipe on the inside of the wall appeared to have been recently broken off just under one of the pumps. There was some water found in the four-inch pipe when it was uncovered at various places, but there was a shut-off in the pipe just outside the company's premises, and there is no evidence to show it was ever opened, or if opened, when it was closed, nor was there any evidence that the water found in the pipe was water from the city main.

In the absence of proof that the company ever used water through this pipe, it cannot be inferred that the water found in the pipe was necessarily from the city main. While the evidence raised a strong suspicion that the company did use water through the pipe, there is no evidence connecting the defendant with such use or tending to show that he knew of such use. The evidence shows that he was, "the superin-

tendent of the packing house,'' but does not show what were
his duties as such superintendent, or that he had any control
over the engineer who directed the laying of the pipe or over
the pump house referred to in the evidence.

The city presented a bill against the Continental Company,
of some $29,000 for water claimed to have been used during
some three years previous through the four-inch pipe. Con-
ferences took place between one Goodwin, who appeared to act
in the interests of the company, and the city officials. At one
of these conferences the assistant corporation counsel, Mr.
Nourse, the head of the city water department, and the de-
fendant Boer were present. The object was to arrive at a
settlement of the claim of the city. I have carefully read
the evidence as to what took place at this conference, and
also as to the conversations that took place subsequently at
the pump house wherein the defendant took part. I fail to
find any admission by the defendant that any water had been
used to his knowledge, coming through the pipe. It was ex-
pressly said that Mr. Boer was present to give any informa-
tion that he possessed in regard to the matter, and did give
some information as to the length of time the engineer had
been in the employ of the company, the capacity of the
pumps and as to the time they usually ran. Two or three
times in the conferences at which he was present, Boer, it
appears, declared that he ''had nothing to do with the pipe''
in question, and he did not admit that any water ever was
used through this pipe by the company. On the contrary, he
''did not believe a drop of water had ever been used.'' I
fail to find any evidence in the conversations referred to or
in conversations testified to by Nourse with the defendant
Boer, that he made any admission implicating himself as
directing or knowing of the laying of the pipe, or the use of
water through the same.

The assistant corporation counsel, by judiciously made
threats to cut off all water connection with the packing com-
pany's premises, succeeded in compelling the packing com-
pany to pay $6,000 for water claimed to have been illegally
used. It also appears in the evidence that there were two

meters connected with authorized pipes running into the packing company's plant and that the meter readings for some six days after the uncovering of the four-inch pipe (which was the 13th of September, 1900), showed an increase of water used each day of from ten to twenty-nine thousand gallons and an increase above the former daily average of about twenty-three thousand gallons, but there were two artesian wells (that had pipes running into the same well where this four-inch pipe led into) which were sometimes used and sometimes out of use and the evidence failed to show whether water from these two artesian wells, or either of them, was used during the time of this "increase" of the use of water.

I am inclined to think that the evidence that the packing company paid some six thousand dollars for water claimed by the city to have been used through the pipe in question, may have influenced the jury in their verdict, notwithstanding the fact that the court ruled out such evidence upon its subsequently appearing during the trial that the payment of the $6,000 was a forced payment and was made because of threats made by the assistant corporation counsel to have the city water cut off from the company's plant if that amount was not immediately paid. The state, it is clear, has been much hampered in obtaining evidence as to what took place upon the company's premises, and by reason of its failure to find the parties who could testify to the same, but it does not appear that the defendant is responsible therefor. If the company did steal any water from the city, the defendant should not suffer for the same merely because he was superintendent of the packing house with no evidence as to what were his duties or powers as such, unless it is shown that he ordered the laying of the four-inch pipe, or ordered the use of the water through the same, or in some way aided, abetted or advised the laying of the pipe or the stealing of the water. Strong suspicion or strong probabilities of guilt are not sufficient to overcome the presumption of innocence with which the law clothes every defendant.

The motion for new trial must be granted.

I will say in addition that in my opinion the printed stock instruction to the effect that it is not necessary for the state to prove every circumstance relied upon to show the guilt of the defendant, but that it is sufficient, if, upon considering all the evidence, the jury believe the defendant guilty, is not good law in any case like the present where circumstantial evidence alone is relied upon.